IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

William B.,[1]                                               No. 3:19-cv-01101-HZ

                        Plaintiff,                            OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.

Laurie B. Mapes
Attorney at Law
PO Box 1241
Scappoose, OR 97056-1241

        Attorney for Plaintiff

Jeffrey E. Staples
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Renata Gowie
U.S. Attorney's Office District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff William B. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB November 7, 2014, alleging an onset date of September 22, 2014. Tr. 264, 205.[2] Plaintiff's date last insured ("DLI") is December 31, 2019. Tr. 205. His application was denied initially and on reconsideration. Tr. 184, 205.

      On January 17, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 114. On June 11, 2018, the ALJ found Plaintiff not disabled. Tr. 105. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on hypertension, pacemaker to control heartbeat, type 2 diabetes, stroke, arthritis, spinal stenosis, back injury, headaches, broken right hand, and congestive heart failure. Tr. 313. At the time of his alleged onset date, he was 49 years old. Tr.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. ECF 9.

2 – OPINION & ORDER

205. He has a high school education and past relevant work experience as a security guard and a

trailer truck driver. Tr. 97, 104.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step

procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases,

agency uses five-step procedure to determine disability). The claimant bears the ultimate burden

of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137,

140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines

whether the claimant has a "medically severe impairment or combination of impairments."

*Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not

disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly

or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§

404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the

Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date. Tr. 92.  Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "spine disorder, obesity, congestive heart failure, cardiac dysrhythmias." Tr. 92. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 95. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

> he can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. Balancing is not limited. He can tolerate occasional exposure to fumes, odors, dusts, gases, and pulmonary irritants, and hazards, such as moving mechanical parts and unprotected heights.

Tr. 96. Within these limitations, the ALJ concluded that Plaintiff could perform his past relevant work as a security guard. Tr. 104. At step five, the ALJ found Plaintiff capable of performing jobs that exist in significant numbers in the national economy including production assembler, cleaner, housekeeping, and inspector and hand packager. Tr. 105. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

//

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff contends the ALJ erred by (1) failing to provide clear and convincing reasons for rejecting his subjective symptom testimony, (2) rejecting assessments from three vocational rehabilitation specialists and rejecting the functional limitations they described, (3) failing to explain her reasons for finding that Plaintiff's impairments did not meet the requirements of Listing 1.04, and (4) crediting an examiner's opinion that Plaintiff can work full time at "light" exertion and rejecting the examiner's limitation on stooping and bending. Pl.'s Opening Br. 4, 17, ECF 10. For the following reasons, the Court reverses the ALJ's decision and remands this case for further proceedings.

I.        Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to reject his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: first, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015).

Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (the reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony."). Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in the testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

Plaintiff testified that he has severe back and neck pain. Tr. 126. He noted that due to his back pain he has to take breaks, rest, and adjust his position when he stands on his feet. Tr. 147. He testified that he fatigues easily and sometimes "can't make it through a day without having to rest." Tr. 126. He stated that he has to rest for two to four hours a day and that if he misses his nap, the next day he "can't function" and spends most of the day in bed. Tr. 143–144.

At the time of the hearing, Plaintiff lived in a camper behind an autobody shop without running water or a bathroom. Tr. 128–129. He testified that to use running water he walks 700 yards to his friend's house. Tr. 129. Plaintiff said that he is not able to walk the 700 yards every day and depending on how badly he is hurting that day, he stops to rest two to three times. Tr. 148.

Plaintiff testified that he drops things, like his keys or a Gatorade bottle, when using his left hand. Tr. 148. He does laundry on his own, very seldom does yard work, and buys prepared and microwaveable foods for his meals. Tr. 132, 129. Before he lived in the camper, Plaintiff

lived with a friend. Tr. 135. He mowed his friend's lawn but broke the job up over two to three days. Tr. 136.

After his stroke, Plaintiff reports that he "has a hard time understanding" and does not have the patience he used to with people. Tr. 150 He gets frustrated easily when he does not understand things. Tr. 142.

The ALJ gave four reasons for rejecting Plaintiff's subjective symptom testimony. First, she found inconsistencies between the record and Plaintiff's testimony that he lacked strength. Tr. 100. Second, she found that Plaintiff had not presented evidence that linked his reported tendency to tire easily to a specific physical impairment. *Id.* Third, she found inconsistencies between the record and Plaintiff's testimony that his back pain is constant. Fourth, she found that Plaintiff's back pain is not "impervious to treatment." *Id.* The Court finds that the ALJ erred by not providing clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony about his fatigue and treatment of his back pain, but did not err in discounting his testimony related to strength and constant back pain.

A.     Inconsistencies with the Medical Record

Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record).

An ALJ may also consider objective medical evidence in evaluating a plaintiff's subjective symptom testimony, so long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. § 416.929(c); *Rollins v. Massanari*, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective

medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] .... While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (internal quotation and brackets omitted); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("Graphic and expansive" pain symptoms could not be explained on objective, physical basis by claimant's treating physician).

### i.    Strength

The ALJ found that multiple examinations that showed 5/5 strength in Plaintiff's upper and lower extremities contradicted Plaintiff's testimony that he lacked strength. Tr. 100. Prior inconsistent statements can support an ALJ's credibility determination. *Ghanim*, 763 F.3d at 1163 (citations omitted).

In Plaintiff's February 9, 2015 Function Report, he wrote "I don't have the strength I had before, and I have problems with getting tired easy and shortness of breath." Tr. 311. In his November 25, 2015 Function Report he wrote "I don't have strenth [sic] and I get tired very easy. If I do hard work, I have to take a nap for several hours." Tr. 341. In multiple clinical settings, Plaintiff received a 5/5 on strength testing in his upper and lower extremities. Tr. 416, 470, 510, 546, 557, 833, 933. As the ALJ stated, these findings contradict Plaintiff's written statement in the November 2015 Function Report that he lacks strength.

Plaintiff urges the Court to read his November 2015 Function Report statement in context and suggests that his statement is better characterized as a comment on his endurance. While this may be a plausible interpretation of Plaintiff's comments, especially in light of the February 2015 Function Report, the ALJ's interpretation of Plaintiff's plain statement in the November 2015 Function Report is rational. *See Vasquez*, 572 F.3d at 591 ("Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."); *see also Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). Accordingly, the ALJ provided a clear and convincing reasons to discount Plaintiff's testimony related to strength.

> ii.    Fatigue

The ALJ found that Plaintiff had not "presented evidence that definitively link[ed]" his reported tendency to tire easily to "a specific physical impairment." Tr. 100. A claimant need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996)). The ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 100. There is no evidence that his multiple medically determinable impairments do not cause his alleged fatigue. Accordingly, a lack of evidence linking his fatigue to one of his many medically determinable impairments is not a clear and convincing reason to discount Plaintiff's testimony. The ALJ does not provide another reason for discounting his fatigue testimony. The ALJ erred in discounting Plaintiff's testimony regarding fatigue.

//

iii.    Back Pain

Plaintiff testified that he was unable to work due to "severe back pain and neck pain." Tr. 126. Plaintiff did not testify to constant back pain at his hearing, but at multiple medical visits he complained of constant back pain. Tr. 448, 827, 870, 932. At other visits, providers reported that Plaintiff was "negative for backpain." Tr. 478, 502, 504, 538. The ALJ relied on these inconsistencies to discredit Plaintiff's subjective reports that his back pain is "constant." An ALJ may reject a plaintiff's subjective symptom testimony that does "not comport with objective evidence in [his] medical record." *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Plaintiff argues that the ALJ mischaracterized the record because on several other occasions he reported symptoms of back pain. Plaintiff's records do support a long history of low and mid-back pain. Tr. 415, 463, 465, 470, 876, 932. However, the ALJ did not discredit Plaintiff's testimony related to back pain generally, only his complaints of "constant" backpain. The ALJ identified a specific inconsistency between Plaintiff's subjective reports and the medical record. As a result, the ALJ did not err in discounting his testimony regarding constant back pain.

B.    Treatment

The ALJ found that Plaintiff's backpain was not "impervious to treatment" and discounted his testimony on this basis. Tr. 100. The ALJ cited a chart note from Dr. Jessica Lorenz from April 15, 2016 for this proposition, suggesting that Plaintiff could "lose weight and engage in physical therapy." *Id*; Tr. 886.

The ALJ may consider medical evidence of improvement in evaluating a claimant's symptom testimony. *Morgan*, 169 F.3d at 599-600. The ALJ may also rely on "inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674

F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)) (internal quotation marks omitted).

The ALJ does not cite medical evidence of improvement, only a suggestion by Dr. Lorenz that weight loss and physical therapy could improve Plaintiff's back pain. The record shows that Plaintiff has sought physical therapy for his back pain and that he "failed PT." Tr. 446-447, 885-886, 889, 875. As for weight loss, in 2017, Plaintiff underwent bariatric surgery to address his diagnosed morbid obesity. Tr. 998. Before the surgery, his weight was 329 pounds. Tr. 1001. At his January 2018 hearing, Plaintiff reported his weight as 235 pounds. Tr. 128. Despite this significant weight loss, Plaintiff testified to continued back pain. Tr. 126. Rather than improvement, the record shows that Plaintiff has sought regular and aggressive treatment for his back pain without success. Dr. Lorenz's chart note does not constitute a clear and convincing reason to reject Plaintiff's testimony related to his backpain.

In sum, the ALJ erred by discounting Plaintiff's testimony about his fatigue and treatment of his back pain but did not err in discounting his testimony related to strength and constant back pain.

II.    Medical Testimony

Plaintiff argues that the ALJ erred by according insufficient weight to three vocational specialists: Claudia von Hammerstein, PT, Colleen Carney, RN CRRN CMC, and Mary Lee Nichols, Ph.D. She also argues the ALJ erred by improperly evaluating the testimony of Kim Webster, M.D. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick*, 157 F.3d at 722. Where medical evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are

functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)
(citation omitted).

      A. Claudia von Hammerstein, PT

      Ms. von Hammerstein conducted a Functional Capacity Evaluation (FCE) of Plaintiff
over two days. Tr. 1144. The purpose of the FCE was to assess Plaintiff's "overall physical
ability to work at any occupation and provide symptom follow-up and reinforcement of physical
therapy education." *Id.* The FCE stated how long throughout a workday Plaintiff could sustain
certain physical activities. It also described residual functional deficits, abilities, and made work
modification recommendations. Tr. 1144–1145. The FCE found Plaintiff able to work in the light
medium category and recommended a "graded re-entry to work . . . starting at 15-20 hours per
week and increasing hours as tolerated." Tr. 1147.

      Physical therapists are not considered acceptable medical sources. *See Huff v. Astrue*, 275
Fed.Appx. 713, 716 (9th Cir. April 28, 2008) (noting that physical therapists are "other"
sources). Information from medical sources other than "acceptable medical sources" may
provide insight into "the severity of the impairment(s) and how it affects the individual's ability
to function." SSR 06–03p. The ALJ must consider several factors when evaluating the opinion of
such sources, including: (1) length of relationship and frequency of contact; (2) consistency of
opinion with other evidence; (3) quality of source's explanation for opinion; (4) any specialty or
expertise related to impairment; and (5) any other factors tending to support or refute the
opinion. *See* SSR 06–03p; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under Ninth Circuit law,
evidence from "other sources" is considered under the same standard as that used to evaluate lay
witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*,
674 F.3d at 1111 (because physician's assistant was not an acceptable medical source, ALJ could

discount physician's assistant's opinion for germane reasons). "Further, the reasons germane to each witness must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

The ALJ found that Ms. von Hammerstein "overstates the claimant's stand/walk limits" and gave little weight to the work modification recommendations because they were "recommendations, not functional limits." Tr. 103. The ALJ explained that she prefers "the State agency determinations because the consultants are medically acceptable sources with greater education and expertise than a physical therapist." *Id.* None of these reasons are germane to the witness.

The ALJ's finding on Ms. von Hammerstein's stand/walk recommendation is not a germane reason to discount her testimony. "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). While a conflict with the medical evidence could be a germane reason to discount Ms. von Hammerstein's testimony, the ALJ does not explain how the stand/walk limits were overstated compared to the other medical evidence in the record. The ALJ's general description of the medical evidence does not identify a contradiction either. Without weighing the evidence and scouring the record, the Court cannot determine whether this finding is supported by substantial evidence. Thus, it cannot serve as a germane reason for discounting Ms. von Hammerstein's opinion.

Additionally, a finding that the FCE included recommendations versus functional limitations is not a germane reason to discount Ms. von Hammerstein's opinion. Ms. von Hammerstein's opinion does translate findings from objectives tests into functional limitations, they are just styled as "recommendations" in her report. And, importantly, the FCE developed by

Ms. von Hammerstein includes a functional limitation to "Light Medium Category" work. Tr. 1146.

Given that the previous two reasons do not serve as a proper basis to discount Ms. von Hammerstein's opinion, preferring an "acceptable medical source" over a non "acceptable medical source" is not a germane reason to discredit a witness. "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'" SSR 06-03P, 2006 WL 2329939, at *5 (Aug. 9, 2006). However, it is not "an independently permissible germane reason to discount" the opinion of a non-acceptable medical source. *See James B. v. Berryhill*, No. 6:17-CV-1888-SI, 2018 WL 5786218, at *9 (D. Or. Nov. 5, 2018) "An ALJ may not reject an opinion solely on the basis that it is proffered by a non-acceptable medical source." *Id.* (citing *Lori S. v. Berryhill*, 2018 WL 4742511, at *11 (D. Or. Oct. 2, 2018) and *Tully v. Astrue*, 2013 WL 1314197, at *7 (D. Ida. Mar. 27, 2013) ("The ALJ cannot discount the opinion of [a treating nurse practitioner] simply because it falls into the category of 'not an acceptable medical source' for some purposes.")). Without more, this was not a germane reason to discount Ms. von Hammerstein's opinion.

B.   Colleen Carney, RN CRRN CMC

Nurse Carney issued an assessment of Plaintiff's functional limitations after reviewing Plaintiff's medical records. Tr. 1139. She found several functional limitations including that he has "very limited range of lift/carry; needs to be waist to mid chest, short distances. Stand/walk/sit maximum consecutive time l hours; needs ability to change positions frequently. Given his level of fatigue; may need ability to lay down after a few hours work with 1/2-1 hr. rest before resuming work." Tr. 1140.

Under the regulations applicable to this claim, Nurse Carney is a "non-acceptable" medical source and thus to properly discount her testimony the ALJ must give specific reasons germane to the witness. *Hale v. Berryhill*, No. 3:17-CV-00697-HZ, 2018 WL 2221675, at *9 (D. Or. May 15, 2018).

The ALJ rejected the exertional limits identified by Nurse Carney as "not supported by the overall record." Tr. 103.  She stated that Nurse Carney's findings related to the need to lie down, fatigue, part-time work, and absenteeism are not supported by the medical record. *Id.* In analyzing Nurse Carney's opinion, the ALJ does not explain how these findings are not supported by the medical record and does not cite specific contradictions within the record. Additionally, the general description of the medical evidence does not elucidate how these findings are not supported by evidence in the record. The Commissioner points to the ALJ's findings related to backpain and strength but the ALJ did not discount Nurse Carney's testimony related to back pain and strength. Without more, the Court cannot determine whether these were germane reasons to discount Nurse Carney's testimony.

The ALJ also found that Nurse Carney overstated Plaintiff's ability to work with other people. Tr. 103. The ALJ properly discounted Nurse Carney's opinion on this basis. The ALJ identified an inconsistency between the medical evidence and Nurse Carney's finding. As the ALJ stated, Plaintiff did not self-report "problems getting along with others." Tr. 346. In other parts of the opinion, the ALJ highlighted Plaintiff's participation in group activities such as attending church and Bible study. Tr. 94. Participation in these activities and Plaintiff's self-report contradict Nurse Carney's opinion on Plaintiff's ability to work with others. The Court finds that the ALJ provided a germane reason, supported by substantial evidence in the record,

for discounting Nurse Carney's opinion related to Plaintiff's ability to work with other, but not as related to his physical limitations.

     C.     Mary Lee Nichols, Ph.D.

Dr. Nichols reviewed Plaintiff's OVR file to conduct her assessment. Tr. 1137. She identified several functional limitations. *Id.* She stated that Plaintiff was "[g]uarded/poor for full-time (or initially even half-time) employment due to limited stamina and endurance, becoming easily mentally, emotionally, and cognitively fatigued and leading to becoming overwhelmed and hopeless." *Id.*

The ALJ gave Dr. Nichols' opinion little weight because it was "vague" and failed to identify specific functional limitations. She also found that the opinion was not consistent with Plaintiff's self-report.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a non-examining physician. *See Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir.2007). A non-examining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan,* 143 F.3d 1240, 1244 (9th Cir. 1998).

The Court finds that the ALJ's gave specific reasons supported by substantial evidence in the record to accord Dr. Nichols' opinion little weight. Citing the record, the ALJ noted that Plaintiff "does a lot of reading" and reported that he can pay attention "a good wile (sic)." Tr. 94, 346. He responded "yes" to the question, "Do you finish what you start?" *Id.* These reports contradict Dr. Nichols' identified functional limitations and provide a basis to reject her opinion. The ALJ also properly rejected the opinion as vague, giving the specific example of the finding

"has difficulty trusting others." Tr. 101. A physician's reports should show how a claimant's symptoms translate into specific functional deficits which preclude certain activities. *Morgan*, 169 F.3d at 601. Much of Dr. Nichols opinion fails to make connections to specific functional limitations. The ALJ properly discounted her testimony on this basis.

>    D.    Kim Webster, M.D.

Dr. Webster performed a comprehensive musculoskeletal evaluation of Plaintiff. Tr.  827. Dr. Webster recommended "limiting lifting and carrying to 20 pounds occasionally and 20 pounds frequently" and a "limit on repetitive bending and stooping." Tr. 835. She recommended no other functional limitations. *Id.*

The ALJ gave weight to the lift/carry limits identified by Dr. Webster, rejected the other postural limitations, and rejected her limitation on "stooping and bending" finding the degree of limitation unclear. Tr. 101.

Dr. Webster conducted a one-time evaluation of Plaintiff and is thus an "examining physician." If another physician does not contradict an examining physician, the ALJ may reject it only for clear and convincing reasons. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006).

Plaintiff argues that the ALJ erred by not rejecting Dr. Webster's opinion because from his perspective she "reviewed limited records." Pl. Brief at 32. How well a medical opinion considers all pertinent evidence is one factor the ALJ can consider in deciding the weight to give a medical opinion. 20 C.F.R. § 404.1527(c)(3). Dr. Webster conducted her own evaluation of the Plaintiff, including several objective tests. Tr. 827-835. The ALJ gave a detailed description of this evaluation and appears to weigh Dr. Webster's opinion on that basis. An alleged limited

review of records is not a clear and convincing reason to discount Dr. Webster's testimony given that she is an examining physician.

Next Plaintiff argues that the ALJ erred by rejecting Dr. Webster's limitation on bending and stooping. Pl.'s Opening Br. 33. Dr. Webster's recommendation on bending and stooping is contradicted by the State's examining physicians. As a result, the ALJ must provide specific and legitimate reasons supported by substantial evidence to reject it. *Garrison*, 759 F.3d at 1012. The ALJ rejected this recommendation because the degree of limitation was "unspecific." Tr. 101. An ALJ may discount medical opinion that are not specific enough. *See Darden v. Saul*, No. 19-35696, 2021 WL 1329036, at *1 (9th Cir. Apr. 9, 2021) ("Lack of specificity regarding functional limitations is a specific and legitimate reason to discount an opinion."). Thus, the Court finds that the ALJ provided a specific and legitimate reason, supported by substantial evidence in the record, for discounting Dr. Webster's opinion.

III.    Step Three: Meeting or Equaling Listings 1.04

Plaintiff alleges that the ALJ erred at step three of the sequential analysis by finding that his back impairment did not meet or equal Listing 1.04 Disorders of the Spine. The SSR's "Listing of Impairments" generally describes impairments that are so severe as to be considered presumptively disabling. 20 C.F.R. §§ 404.1520(d), 416.920(d). "The mere diagnosis of an impairment listed in 20 C.F.R. Appendix 1, Subpart P ... is not sufficient to sustain a finding of disability." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir.1990); 20 C.F.R. § 404.1525(d) (same). "To meet the requirements of a listing, [a claimant] must have a medically determinable impairment ... that satisfies all of the criteria in the listing." *E.g.*, 20 C.F.R. § 404.1525(d). "If a claimant has more than one impairment, the Commissioner must determine whether the combination of [the] impairments is medically equal to any listed impairment." *Lewis*, 236 F.3d

at 514 (citation and quotation marks omitted); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id.*

Listing 1.04 provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)....

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. The ALJ found that "the record does not show degenerative disc disease has caused compromise of a nerve root including the cauda equina with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." Tr. 95.

Plaintiff argues that the record contains medical evidence that he meets the criteria of Listing 1.04A. He also complains that the ALJ did not explain her rationale. The record does not support a finding that Plaintiff satisfies all the criteria of the listing. For example, Listing 1.04A requires "motor loss (atrophy with associated muscle weakness or muscle weakness)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Although Plaintiff alleges motor loss, the record does not support the requisite muscle weakness. The ALJ discussed medical evidence related to strength

in Plaintiff's lower and upper extremities and appropriately discounted his testimony regarding strength. Tr. 100. As for Plaintiff's low back, he did not report discomfort with straight leg raises while sitting, which is required to meet Listing 1.04A. Tr. 832. Additionally, the ALJ's general discussion of the medical record related to Plaintiff's spine disorder and other symptoms were sufficient to support her finding that Plaintiff's condition does not meet Listing 1.04A. *See Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-CV-01373-HZ, 2017 WL 1927926, at *3 (D. Or. May 10, 2017) ("the Ninth Circuit has explained that, while an ALJ must discuss and evaluate the evidence that supports her conclusion, it is not required that she do so under the heading 'Findings.'") (citing *Kennedy*, 738 F.3d at 1178).

Next, Plaintiff argues the ALJ erred by failing to evaluate medical equivalence. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683; *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to require the [Commissioner], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments."). Plaintiff failed to offer a plausible theory as to how his combination of impairments medically equaled the severity of a Listed impairment. Accordingly, the ALJ did not err at step three.

IV.    Remand

Plaintiff asks the Court to credit the above-described testimony as true and remand this case for payment of benefits of for further proceedings. To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical

opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the Court remands the case and credits the improperly discredited evidence as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is "the proper course," except in rare circumstances. *Treichler*, 775 F.3d at 1101.

Plaintiff asserts that remand for an award of benefits is appropriate here. Pl.'s Op. Br. 34–35. He argues that when credited as true the opinions of the vocational rehabilitation consultants require a finding that he is disabled because he cannot sustain fulltime work.

As explained above, the ALJ did fail to articulate legally sufficient reasons for rejecting the opinions of two of the vocational rehabilitation consultants who are non-acceptable medical sources. As such, the ALJ failed to properly consider the limitations contained therein when proceeding through the steps of the sequential evaluation. However, the Court finds that further proceedings, rather than a remand for benefits, would be useful because it is unclear from the record that the ALJ would need to credit the vocational rehabilitation consultants opinions if she had properly considered the other evidence. Exercising its discretion, the Court finds it is appropriate to remand this case for further proceedings so that the ALJ may properly consider and evaluate the evidence.

//

//

//

//

//

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for administrative proceedings.

IT IS SO ORDERED.

DATED:_____August 16, 2021_____.

_____

MARCO A. HERNÁNDEZ

United States District Judge